# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Desmond D. Clark,**
**Petitioner Below, Petitioner**

**vs) No. 12-0524** (Kanawha County 11-MISC-463)

**David Ballard, Warden,**
**Mt. Olive Correctional Complex,**
**Respondent Below, Respondent**

**FILED**

June 7, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Desmond D. Clark, by counsel Sherman L. Lambert Sr., appeals the Circuit Court of Kanawha County's April 12, 2012, order denying his petition for writ of habeas corpus. Respondent David Ballard, by counsel Marland L. Turner, filed his response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner was indicted during the September of 2008 term of the grand jury for breaking and entering, kidnapping, and murder. The indictment stemmed from the July 5, 2008, murder of Nalisha Gravely in a Taco Bell restaurant in Charleston. It was alleged that petitioner chased Ms. Gravely, fired two shots at her, but missed. He caught her, slung her over his shoulder, and carried her back to an SUV where he forced her inside and drove away. Ms. Gravely jumped out of the SUV and fled into Taco Bell. Video surveillance in the restaurant captured petitioner entering the restaurant and leaping over the counter. Petitioner located Ms. Gravely inside the restaurant and shot her six times before leaving the restaurant and driving away.

Petitioner was identified by numerous witnesses at Taco Bell and by one witness who saw him at both the scene of the kidnapping and the murder. None of the witnesses noticed any impairment in petitioner's condition during the entire episode. Petitioner met with his expert, Dr. Bobby Miller, five days after he killed Ms. Gravely. Dr. Miller was disclosed by the defense as offering testimony as to the general effects of Xanax and alcohol use with no particular opinion with relation to petitioner. During a pre-trial proceeding on March 19, 2009, petitioner moved for a continuance to obtain additional mental health records to be reviewed by Dr. Miller. Petitioner claimed the additional records might lead to a diminished capacity defense.

A plea agreement was reached, and petitioner entered a plea of guilty to first degree

1

murder on March 30, 2009. In exchange for the plea, the State agreed to dismiss the remaining charges. At the time the plea was entered, the circuit court inquired of defense counsel whether petitioner was giving up any further pursuit of a diminished capacity defense. At that hearing, counsel for petitioner advised that petitioner no longer wished to pursue a defense of diminished capacity.[1] During that hearing, petitioner was asked by the court if he understood that there was a possibility the court would not grant mercy, and petitioner replied that he did.

At the sentencing hearing in July of 2009, petitioner's trial counsel presented Dr. Miller's testimony in mitigation of punishment. Dr. Miller testified that when he evaluated petitioner five days after the murder, he believed petitioner to be competent. He also testified it was his opinion that petitioner knew what he was doing and was capable of conforming his behavior to the requirements of the law but failed to resist the impulse to violence when angered. Dr. Miller further testified that petitioner's self-reported consumption of Xanax and alcohol, if taken as true, would have made it even less likely that petitioner would control his impulses. Dr. Miller did not testify that petitioner's consumption of those substances would have affected petitioner's capacity to form a specific intent to kill or to premeditate or deliberate. Petitioner was sentenced to life imprisonment without the possibility of parole. On November 2, 2009, petitioner filed a motion for reconsideration before the circuit court, again citing the issues raised in Dr. Miller's reports. The circuit court denied that motion by order dated November 10, 2009.

Petitioner filed his petition for writ of habeas corpus before the circuit court on October 11, 2011. In the petition, petitioner alleges two deficiencies by trial counsel: (1) failure to investigate mental and medical defenses; and (2) failure to offer mitigating evidence of Xanax and alcohol use at the time of the offense. On March 9, 2012, the circuit court held a hearing on the petition for writ of habeas corpus. During the hearing, the circuit court heard testimony from petitioner and his mother who both testified that they were advised by trial counsel that the proposed plea agreement was strategically the best course because it was a calculated guess by counsel that petitioner would receive mercy. They acknowledged, however, that counsel did not make any guarantees that the court would grant mercy.

On April 12, 2012, the circuit court entered its order denying petitioner's petition for writ of habeas corpus. In reaching its decision, the circuit court reviewed the transcripts from the 2008 arraignment; a motions hearing on March 19, 2009; the plea hearing on March 28, 2009; and the sentencing hearing on July 2, 2009. The court also heard testimony from witnesses and argument from counsel during a March 9, 2012, hearing.

Petitioner argues that the circuit court improperly denied his petition for writ of habeas corpus on the ground that his plea was not voluntarily made. He contends that his counsel advised him to plead guilty to first degree murder with the use of a firearm so the judge would sentence him to life with mercy, meaning he would be eligible for parole in fifteen years. However, he was sentenced to life without mercy. As set forth above, during the plea hearing, the circuit court inquired of petitioner whether he understood that the court had the option whether to grant mercy, and he responded that he understood.

---

[1]The record indicates that the decision was made with the knowledge that petitioner had been diagnosed with ADHD and intermittent explosive disorder prior to 2008.

Petitioner next contends that his counsel had a duty to investigate certain mental and medical defenses and that the alleged failure to do so was in violation of his Sixth Amendment right to the effective assistance of counsel. Petitioner's final assignment of error is his contention that his right to the effective assistance of counsel was violated because counsel failed to offer mitigating evidence of Xanax and alcohol use being contributing factors at the time of the offense. It is apparent from the record that petitioner's counsel involved Dr. Miller in the defense at an early point in this matter as part of the investigation into petitioner's mental and medical defense. However, petitioner made the strategic decision to enter into a plea agreement in an effort to try to obtain a sentence of mercy. The record also evidences the fact that counsel, through Dr. Miller, introduced petitioner's contention that he was under the influence of both Xanax and alcohol at the time of the crime as mitigating evidence.

Having reviewed the circuit court's well-reasoned "Order Denying Petition for Writ of Habeas Corpus" entered on April 12, 2012, we hereby adopt and incorporate the circuit court's well-reasoned findings and conclusions as to the assignments of error raised in this appeal. The Clerk is directed to attach a copy of the circuit court's order to this memorandum decision.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 7, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

12-0524
MD attachus

FILED

2012 APR 16 ... 03
CATHY S. GAL...
KANAWHA COUNTY ... CLERK
... COURT

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA,

State of WestVirginia, ex rel.
DESMOND D. CLARK,
           Petitioner,

v.
                                            11-MISC-463

DAVID BALLARD, WARDEN,
MT. OLIVE CORRECTIONAL COMPLEX,
           Respondent.

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

On the 9th day of March 2012, came the Petitioner, Desmond D. Clark, in person and by his counsel, Sherman L. Lambert, Sr., and came the Respondent, by counsel, Daniel L. Holstein, Assistant Prosecuting Attorney for Kanawha County, for a hearing on the Petition for Writ of Habeas Corpus.

Whereupon, the Petitioner called witnesses, which were cross-examined by the Respondent. The Court also, upon motion of the Respondent, and with the agreement thereto of the Petitioner, admitted as evidence in this proceeding the transcripts of the hearings in the underlying criminal proceeding. The Court notes that the subject transcripts are from the arraignment of November 24, 2008; a motions hearing on March 19, 2009; the plea of guilty on March 30, 2009; and the sentencing hearing on July 2, 2009. Following the receipt of this evidence, the Court heard the arguments of counsel

and took the matter under advisement. The Court now makes the following findings of fact and conclusions of law, and DENIES the Petition for a Writ of Habeas Corpus.

## FINDINGS OF FACT

Desmond Clark was indicted by the September 2008 term of the Grand Jury of Kanawha County for Breaking and Entering, Kidnapping, and Murder. He was arraigned November 24, 2008. The State provided full discovery to the defendant well in advance of the scheduled trial.

The Court finds that the Petitioner, Desmond Clark, on the day of the murder, chased the victim Nalisha Gravely, on foot in the City of Charleston, firing two shots at her, but missing. He caught her, slung her over his shoulder, and carried her back to an SUV, placing her inside, and drove away with her. About an hour later, Nalisha jumped out of the same SUV, and fled into the Taco Bell located on Patrick Street in Charleston, which was full of customers. The Petitioner followed her inside. Caught on video was the Petitioner coming into the restaurant, leaping over the serving counter. He went to the back, past workers, found Nalisha hiding in a washroom closet, and shot her six (6) times killing her. He then strode back out of the Taco Bell to his vehicle and drove away, giving one witness the peace sign.

Desmond Clark was identified by various witnesses, including a mechanic who knew him, workers at the Taco Bell, and one witness who saw him at both the scene of the kidnapping and the murder. The SUV he had been driving was also located. When caught, Desmond Clark quipped to police that it was a good thing they found him before he killed some others. Not one witness noticed any impairment of Desmond Clark's condition during the entire episode of behavior in question. Desmond Clark met with his

expert, Dr. Bobby Miller a mere five days after he killed Nalisha Gravely.

At arraignment, the matter was set for trial in the January 2009 term of Court. In a pre-trial proceeding March 19, 2009, the defense moved for a continuance to obtain additional mental health records to be reviewed by Dr. Miller, who was disclosed by the defense as offering testimony only as to the general effects of xanax and alcohol use, with no particular opinion with relation to the Defendant/Petitioner. The defense articulated that it believed the additional records might lead to a diminished capacity defense. Tr. of Arraignment, p.6.

Ultimately, a plea agreement was reached, and the defendant entered a plea of guilty to First Degree Murder on March 30, 2009. In exchange for his plea of guilty, the State of West Virginia agreed to dismiss the remaining charges, and not to pursue a second offense recidivist action. The parties were free to argue at the scheduled sentencing hearing.

At the time of the entry of the plea of guilty, the court inquired of defense counsel of whether the Defendant/Petitioner was giving up any further pursuit of a mental defense or diminished capacity defense. Tr. of Plea, p. 17. The only records not received by the Petitioner on that issue was records from Wisconsin. Tr. of Plea, p. 18. The Petitioner would have been 9 years of age at the time of those records, according to Exhibit C of the Petition.

At the plea hearing, counsel for the Defendant advised that the defendant no longer wished to pursue a mental defense. Tr. of Plea, p. 19. This decision was made after having the awareness of a diagnosis of ADHD, as well as Intermittent Explosive Disorder, in 2006. Tr. of Plea, p. 18-19. The Defendant, understanding all of his rights, entered his plea of guilty. Tr. of Plea, p. 28. Defense counsel had discussed all possible defenses to the charges. Tr. of Plea, p. 32. The Defendant was fully satisfied with the work his

counsel did, and stated that they answered all of his questions. Tr. of Plea, p. 31. Finally, both of his counsel concurred that the plea, considering all aspects of the case, was in his best interests. Tr. of Plea, p.32.

In addition to the record below, the Court looks to the evidence at the hearing on the Petition. During the hearing on this Petition for Writ of Habeas Corpus, the Petitioner and his mother testified that they were advised by trial counsel that the proposed plea agreement was strategically the best course because it was the calculated guess of counsel that the Petitioner would receive mercy. However, it was acknowledged in testimony that during that conversation, trial counsel did not make any guarantees that the Court would grant mercy. It was further acknowledged that it was understood that the Court could withhold mercy.

At the sentencing hearing on July 2, 2009, armed with Dr. Miller's 2008 psychological evaluation report (Petition, Exhibit A), as well as his updated opinion dated June 16, 2009 (Petition, Exhibit B), defense counsel presented Dr. Miller's testimony in mitigation of punishment. Tr. of Disposition, pp.70-98. Under oath, Dr. Miller testified that when he evaluated the Petitioner five days after the murder, he believed the Petitioner to be competent. Tr. of Disposition, pp. 70-71. Dr. Miller also offered his opinion that the Petitioner knew what he was doing and was capable of conforming his behavior to the requirements of the law, but is merely failing to resist the impulse to violence when angered. Tr. of Disposition, pp. 76-77. Dr. Miller continued further to state that the Petitioner's self-reported consumption of xanax and alcohol, if taken as true, would have made it even less likely that the Petitioner would control his impulses. Tr. of Disposition, pp.78. At no time did Dr. Miller testify that Petitioner's consumption of those substances would have affected the Petitioner's capacity to form a specific intent to kill, or to premeditate or deliberate.

Finally, on November 2, 2009, the Petitioner filed his Motion for Reconsideration before the Court, again citing the same issues raised in Dr. Miller's reports. The Court denied this motion by its Order of November 10, 2009.

## CONCLUSIONS OF LAW

Petitioner raises ineffective assistance of counsel as his only ground for relief. He alleged two deficiencies by trial counsel: (1) failure to investigate mental and medical defenses, and (2) failure to offer mitigating evidence of xanax and alcohol drug use at the time of the offense.

Ineffective assistance of counsel claims are decided by a two-pronged test, to wit: whether "(1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Syllabus Point 5, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995). "Although...judicial scrutiny of counsel's performance must be highly deferential, counsel must at a minimum conduct a reasonable investigation enabling him or her to make informed decisions about how best to represent criminal clients...." Syllabus Point 3, *State ex rel. Daniel v. Legursky*, 195 W.Va. 314, 465 S.E.2d 416 (1995).

"Before a guilty plea will be set aside based on the fact that the defendant was incompetently advised, it must be shown that (1) counsel did act incompetently; (2) the incompetence must relate to a matter which would have substantially affected the fact-finding process if the case had proceeded to trial; (3) the guilty plea must have been motivated by this error." Syllabus Point 3, *State v. Sims*, 162 W.Va. 212, 248 S.E.2d 834 (1978), as quoted in Syllabus Point 4, *State ex rel. Levitt v. Bordenkircher*, 176 W.Va. 162,

342 S.E.2d 127 (1986).

Having fully considered the record and the evidence offered with respect to the Petition, the Court concludes as a matter of law that trial counsel's performance was not deficient under an objective standard of reasonableness. First, as is well documented, trial counsel obtained mental health/medical records from various entities, including Advantage Valley, Braley and Thompson, Prestera, Process Strategies, Shawnee Hills, the Regional Jail Authority, and school records, as well as a prior evaluation by Dr. Bobby Miller. Dr. Miller also conducted his own evaluation of the Petitioner within five days of the offense. See Petition, Exhibits C and D. Counsel's investigation was very thorough, and a clear record was made that only one piece of evidence was lacking, and that was a record from an entity in the State of Wisconsin when the Petitioner was nine years old. Trial counsel even asked for a continuance to make additional efforts to obtain these records, but the motion was denied by this Court. Given the history of seeing numerous professionals since that time, the decision to abandon obtaining those records, after a continuance was denied, was reasonable.

Moreover, the Petitioner testified that his counsel, each of them, as well as their investigator, met with the Petitioner, reviewed discovery with him, and talked about witnesses to call on his behalf. Only after all of this was a plea discussed. The Court also notes that trial counsel filed various motions on behalf of the Petitioner, including a motion for a change of venue. Clearly, trial counsel behaved competently.

Petitioner complains that he "was prejudiced by legal counsel's inability to establish a diminished capacity defense." Petition, p.17. However, the Petitioner has failed to offer evidence of any factual basis for such a defense. Dr. Miller, considering all of the Petitioner's records and history, could offer no opinion supporting a diminished capacity claim as to the *mens rea* requirements of murder or kidnapping. This is a case

where the facts, after being thoroughly investigated, did not lend themselves to a mental defense. The Petitioner has simply failed to meet its burden of proof to satisfy the Court that counsel's performance was deficient.

Counsel reviewed the evidence with Dr. Miller and with the Petitioner. Both of his counsel agreed that given the mountain of evidence against the Petitioner, and the aforecited lack of mental illness/diminished capacity evidence, that it was in the defendant's best interest to enter a plea of guilty. Having obtained an expert, known by this Court to be competent in his field, and having fully discussed the facts as they relate to any possible mental defense, counsel performed reasonably.

It is plain that trial counsel acted competently after a reasonable investigation. The decision to go forward without the record from Wisconsin was reasonable. The Petitioner has not proven to this Court that counsel was deficient. Second, even if it were deficient (for sake of argument), Petitioner has not proven that these additional records would have had any possible effect upon the outcome at trial due to their remoteness in time, and as there were many more recent evaluations, including that of the Petitioner's own expert retained for trial and sentencing purposes, who himself met with the Petitioner within five days of the murder.

The weight of the evidence in this case makes it abundantly clear to this Court that the guilty plea was motivated by the overwhelming strength of the State's evidence, the lack of mental/diminished capacity defense, and matters of strategy, not by any error of defense counsel. None of the three parts of the test in *Sims* are met by the Petitioner.

Finally, after having been reasonably advised by his counsel, and having been questioned by the Court at the time of his plea, it was the Petitioner's knowing, voluntary, intelligent decision to enter his plea and to not pursue a hypothetical claim of diminished capacity. The Court concludes that this decision constituted a knowing *waiver*, evident

from the Court's colloquy with counsel and the Petitioner at the time of the plea of guilty.

As to the second assignment of ineffective assistance of counsel, namely that mitigation evidence was not offered at sentencing, this allegation is also unfounded in the facts. The sentencing hearing was lengthy with the Petitioner's expert testifying in mitigation. His mother even testified to facts supportive of his problems with xanax and alcohol historically. Accordingly, this Court concludes that trial counsel's perfomance was reasonable as it relates to the sentencing hearing.

## CONCLUSION

It is therefore the opinion of this Court that the Petition should be denied. The facts in the record are wholly contradictory to the claims made and are not supportive of the relief requested. The Court concludes that Petitioner has failed to prove that trial counsel's performance was deficient under an objective standard of reasonableness. It is therefore the Order of this Court that the Petition for Writ of Habeas Corpus is hereby DENIED.

The Court notes the objection of the Petitioner.

Entered this the __12__ day of April 2012.

ENTER: _James C Stucky_
Honorable James C. Stucky, Circuit Judge

STATE OF WEST VIRGINIA
COUNTY OF KANAWHA, SS
I, CATHY S. GATSON, CLERK OF THE CIRCUIT COURT OF SAID COUNTY AND IN SAID STATE, DO HEREBY CERTIFY THAT THE FOREGOING IS A TRUE COPY FROM THE RECORDS OF SAID COURT.
GIVEN UNDER MY HAND AND SEAL OF SAID COURT THIS
DAY OF
CLERK
CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

4-12-12  J. Lambert, Sr.
copies sent to:
counsel of record
parties
other_____
(please indicate)
By:
certified/1st class mail   D. Clark
fax:
hand delivery
interval
Deputy Circuit Clerk